IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Illya D. Hadnot,<br><br>     Petitioner,<br><br>v.<br><br>Charles Ryan, et al.,<br><br>     Respondents. | No. CV-15-08160-PCT-PGR (BSB)<br><br>**REPORT AND RECOMMENDATION** |

On September 30, 2015, Petitioner Illya D. Hadnot filed an Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. 7.) Respondents have filed an answer asserting that the amended petition includes both exhausted and unexhausted claims and, therefore, is a mixed petition. (Doc. 11.) Although the amended petition is mixed, Respondents assert that the Court should deny relief because Petitioner is not entitled to relief on his claims. (*Id.*) Petitioner has filed a reply in support of his amended petition. (Doc. 12.) Petitioner does not ask the Court to stay his amended petition while he exhausts available state remedies. (*Id.*) The Court recommends that the amended petition be denied.

**I. Factual and Procedural Background**

  **A. Charges, Trial, and Sentencing**

In 2007, Petitioner was charged with burglary in the third degree, aggravated assault, and attempted armed robbery. (Doc. 7-1 at 12.) Following a trial, a jury found Petitioner guilty of burglary, and the lesser offenses of disorderly conduct involving a

weapon and attempted armed robbery. (*Id.*) The trial court sentenced Petitioner to presumptive, concurrent terms of imprisonment, with the longest sentence being 11.25 years' imprisonment. (*Id.* at 12-13.)

### B.   Direct Appeal

Petitioner filed a direct appeal challenging the trial court's admission of certain evidence and its refusal of a jury instruction. (*Id.* at 10-19.) In addressing Petitioner's claims, the appellate court provided the following description of the incident that resulted in the charges and Petitioner's convictions.[1]

The incident occurred in the early morning on July 16, 2009, at a truck stop in Winslow, Arizona, and involved the robbery of the truck stop, witnessed by two employees, Jason and James. (Doc. 7-1 at 11.) As Jason and James neared the truck stop accounting office, they saw two figures dressed in dark clothes with some kind of head covering near the safe. (*Id.*) One person wore a gray sweater or sweatshirt, and the other wore a black or blue sweater, and both wore dark pants. (*Id.*) The man in the gray sweatshirt reached towards Jason and said, "hey." (*Id.*) Jason turned to leave, but looked back and saw that the man was carrying a knife with a silver blade, black handle, and serrated edge. (*Id.*) Jason ran to the front of the store and told the cashier to call the police. (*Id.*) He saw the two men run from the building and noticed that one was limping. (*Id.*) James chased the men. (*Id.*)

Jason returned to the accounting office and noticed that the trash can had a "Glad" brand white trash bag with a red drawstring, which was different from the trash bags normally used in the office. (*Id.*) When James returned after chasing the two men, he had a knife that he had found, which Jason recognized as the knife he had seen during the incident. (*Id.* at 11-12.)

When police arrived, an officer saw a man walking with a limp and wearing dark pants in the area. (*Id.*) The officer took the man into custody and he was later identified

---

[1] Petitioner does not challenge the Arizona Court of Appeals' description of the incident. (Docs. 7, 12.)

as Petitioner. (*Id.* at 12.) Another officer noticed that Petitioner's boots left a distinct impression in the dirt and remembered seeing similar prints by a sweatshirt found in the area. (*Id.*) Jason identified the sweatshirt as that worn by the person who had carried the knife. (*Id.*) Police took custody of the knife, a trash bag, and a latex glove found in the hallway outside the accounting office. (*Id.*)

Later that day, police searched Petitioner's apartment and found a bag of latex gloves, a box of white Glad trash bags with red drawstring closures, a building sketch, and a store receipt for the gloves, which had been purchased the previous day. (*Id.*) Police took a DNA sample that later connected Petitioner and another individual to the knife and the latex gloves. (*Id.*)

On direct appeal, Petitioner challenged the trial court's admission of evidence found at his apartment after a search. (*Id.* at 10-18.) Petitioner also argued that the State's failure to preserve a "pair of blue latex gloves found at the crime scene entitled him to a *Willits*[2] jury instruction." (*Id.* at 18-19.) The Arizona Court of Appeals rejected both claims. (*Id.* at 17-19.)

### C. Post-Conviction Proceedings

In March 2011, Petitioner filed a notice of post-conviction relief in the trial court pursuant to Rule 32 of the Arizona Rules of Criminal Procedure. (Doc. 7 at 13-15.) Nearly one year later, the trial court appointed Petitioner counsel. (*Id.* at 18.) Petitioner, through counsel, filed a petition asserting that trial counsel was ineffective because he "failed to adequately prepare for trial, failed to object to the introduction of blatantly incongruous evidence, and failed to raise obvious impeachment evidence on cross examination as requested by Petitioner." (Doc. 7-1 at 6.) He specifically argued that trial counsel was ineffective for failing to object to the lack of photographs of evidence that was collected and to the introduction of boots into evidence. (*Id.* at 6.) Petitioner also argued that trial counsel was ineffective for failing to challenge the police report, which described one of the suspects as having flowing long hair, when Petitioner did not have

---

[2] *State v. Willits*, 393 P.2d 274 (Ariz. 1964).

long hair. (*Id.*) Finally, Petitioner argued that trial counsel was ineffective for failing to impeach the witnesses based on their conflicting description of the trash bags. (*Id.*)

The trial court dismissed the petition, finding that trial counsel's performance was neither constitutionally deficient nor prejudicial. (Doc. 7 at 19-22.) Specifically, the court found that trial counsel was not ineffective for failing to object to the lack of photographs because numerous photographs were taken by the police and admitted at trial. (*Id.*) Additionally, trial counsel's failure to object to the admission of the boots was not deficient performance because Petitioner was wearing the boots that were admitted at trial when he was arrested. (*Id.*) The court also found that trial counsel was not deficient for failing to assert a "flowing hair defense" "because the jurors observed Defendant during the 5-day trial and Defendant did not allege the length of his hair changed between the time of the charged offenses and trial." (*Id.*) The court also concluded that considering the "overwhelming evidence of Defendant's guilt, the verdict would have been the same with or without the 'flowing hair defense.'" (*Id.*) The court also rejected Petitioner's claim that trial counsel was ineffective for failing to assert a "trash bag color" defense. (*Id.* at 22.)

On June 24, 2014, Petitioner filed a petition for review with the Arizona Court of Appeals. (Doc. 7-1 at 22-25.) That petition is pending.[3] (Doc. 11, Ex. B.)

### D.   Federal Petition for Writ of Habeas Corpus

On August 30, 2015, Petitioner filed an Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254, asserting the following grounds for relief: (1) Petitioner's Fourth and Fifth Amendment rights were violated because the search warrant was defective and the trial court denied his motion to suppress (Ground One); (2) Petitioner's Fifth Amendment rights were violated when the trial court did not give a *Willits* instruction based on law enforcement's destruction of two blue latex gloves (Ground Two); and (3) trial counsel was ineffective because (a) Petitioner told counsel

---

[3] The Court reviewed the docket in that case and confirmed that the case is pending as of the date of this Report and Recommendation.

that he wanted to testify, but counsel told Petitioner that if he testified, his case would "unravel"; (b) trial counsel did not compare Petitioner's shoe size to the size of the boots that were introduced at trial; (c) trial counsel did not investigate why "the affidavit state[d] that they were looking for [an individual] with long flowing hair"; (d) trial counsel did not investigate "why no photos were taken of any evidence that was collected"; and (e) trial counsel did not investigate "how or w[h]ere these gloves were collected." (Doc. 7 at 6-8.) As set forth below, the Court recommends that the amended petition be denied.

## II.     Exhaustion of State Remedies

Before the federal court may grant habeas corpus relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). A petitioner has not exhausted state court remedies if he has a state appeal or post-conviction proceeding pending at the time he files a petition for writ of habeas corpus in federal court. *Sherwood v. Tomkins*, 716 F.2d 632, 634 (9th Cir. 1983) (dismissing habeas corpus petition as prematurely filed when appeal of conviction was pending); *Schnepp v. Oregon*, 333 F.2d 288, 288 (9th Cir. 1964) (stating that state prisoner had not exhausted state remedies when post-conviction proceeding was pending in state courts); *Martineau v. Elliot*, 2008 WL 3582811, at *1 (D. Ariz., Aug. 13, 2008) (dismissing habeas corpus petition as premature when the petitioner had a post-conviction petition pending in the state court).

As Respondents assert, the record reflects that Petitioner properly exhausted the claim asserted in Ground One on direct appeal. (Doc. 7-1 at 10-20.) Accordingly, that claim is properly before the Court. However, Petitioner did not present to the appellate court his federal challenge to the trial court's failure to give a *Willits* instruction (Ground Two), his claim that trial counsel was ineffective for preventing him from testifying (Ground Three (a)), or his claim that trial counsel was ineffective for failing to challenge how and where the gloves were collected (Ground Three (e)). Respondents characterize these claims as unexhausted and they do not address whether Arizona law would

preclude Petitioner from presenting these claims in a successive post-conviction proceeding and whether these claims should be considered technically exhausted and barred from federal habeas corpus review. Therefore, the Court does not decide whether Respondents could assert a procedural bar to review of these claims in any future filings.

Respondents also state that Petitioner is still attempting to exhaust his claims of ineffective assistance of counsel asserted in Grounds Three (b), (c), and (d). (Doc. 11 at 8.) Petitioner raised those claims in his petition for post-conviction review. (Doc. 7-1 at 5-8.) The trial court denied relief on those claims. (Doc. 7 at 19-22.) Petitioner appealed that ruling by filing a petition for review with the Arizona Court of Appeals, which remains pending. (Doc. 7-1 at 22-25; Doc. 11, Ex. B.) Thus, the Court concludes that the Petition contains both exhausted and unexhausted claims and, therefore, is a mixed petition.

### III. Mixed Petitions

"Federal courts may not adjudicate mixed habeas petitions, that is, those containing both exhausted and unexhausted claims." *Henderson v. Johnson*, 710 F.3d 872, 873 (9th Cir. 2013) (per curiam) (citing *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982)). Ordinarliy, "[f]ederal courts must dismiss habeas petitions that contain both exhausted and unexhausted claims, *Rose v. Lundy*, [455 U.S. 509, 522] (1982), unless a petitioner requests a stay and abeyance of his mixed petition that satisfies the requirements of *Rhines v. Weber*, [544 U.S. 269] (2005)." *Butler v. Long*, 752 F.3d 1177, 1180 (9th Cir. 2014) (per curiam).

Petitioner does not ask the Court to stay his petition and to hold his amended petition in abeyance while he finishes exhausting available state remedies. The Court, however, proceeds as if Petitioner has requested a stay and abeyance because dismissing the amended petition could create statute of limitations issues for the claims that Petitioner has not presented to the state courts. *See Pace v. DiGuglielmo*, 544 U.S. 408, 414 and 416 (2005) (stating that petitioners who are "reasonably confused" about timeliness rules may file "protective" petitions in federal court and ask the court to stay

and abey the federal habeas corpus proceedings under *Rhines* until the state remedies are exhausted.)

Under *Rhines*, a district court has limited discretion to hold in abeyance a habeas petition containing both exhausted and unexhausted claims (a mixed petition) to allow a petitioner to exhaust his claims while the federal proceedings are stayed. *Rhines*, 544 U.S. at 277. Stay and abeyance are appropriate only when (1) there is good cause for petitioner's failure to exhaust his claims first in state court; (2) the unexhausted claims are potentially meritorious; and (3) there is no indication that the petitioner has engaged in intentionally dilatory litigation tactics. *Id.* at 277-278. In *Rhines,* the Court also recognized that, in enacting AEDPA, Congress expressly provided that a state prisoner's habeas petition "may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(2). Thus, the Court stated that a district court "would abuse its discretion if it were to grant [a petitioner] a stay when his unexhausted claims are plainly meritless." *Rhines*, 544 U.S. at 277.

Respondents argue that Petitioner's claims lack merit and, therefore, they oppose the application of the stay and abeyance procedure in this case. (Doc. 11 at 9); *see Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005) (holding a state prisoner's unexhausted petition may be denied on the merits when it is perfectly clear that the prisoner does not raise a colorable federal claim). As set forth below, the Court finds that the stay and abeyance procedure is not appropriate in this case because Petitioner's claims either are not cognizable on federal habeas corpus review or lack merit.

**IV.   Analysis of Petitioner's Claims**

**A.   Ground One**

In Ground One, Petitioner asserts a Fourth Amendment violation based on the trial court's failure to suppress evidence that was obtained pursuant to a deficient search warrant. (Doc. 7 at 6, Doc. 12 at 3.) Petitioner presented this claim on direct appeal, and the appellate court rejected it. (Doc. 7 at 6.) Respondents assert that this claim is not

cognizable on federal habeas corpus review. (Doc. 11 at 9.) As discussed below, the Court finds that Ground One is not amenable to federal habeas corpus review.

"If the state has provided a state prisoner an opportunity for full and fair litigation of his Fourth Amendment claim, [a federal court] cannot grant federal habeas relief on the Fourth Amendment issue." *Moormann v. Schriro*, 426 F.3d 1044, 1053 (9th Cir. 2005) (citing *Stone v. Powell*, 428 U.S. 465, 494, (1976)); *see Newman v. Wengler*, 2015 WL 3700161, at *1, *3 (9th Cir. Jun. 16, 2015) (holding that the doctrine of *Stone v. Powell*, survives the passage of the AEPDA). In determining whether a state prisoner had a full and fair opportunity to litigate his Fourth Amendment claim, a court examines the extent to which the claim was considered by the state trial and appellate courts. *See Abell v. Raines*, 640 F.2d 1085, 1088 (9th Cir. 1981) (finding that a lengthy evidentiary hearing transcript, a four-page appellate opinion, and substantial briefs demonstrated careful consideration of appellant's Fourth Amendment claim).

The records of the state proceedings show that Petitioner received a full and fair opportunity to litigate his Fourth Amendment claim. Petitioner raised a Fourth Amendment claim on direct review. (Doc. 7 at 6.) The court of appeals rejected Petitioner's argument and affirmed the trial court's ruling. (Doc. 7-1 at 10-20.) Thus, Petitioner had a full and fair opportunity to litigate his Fourth Amendment claim and took advantage of that opportunity. Therefore, this Court cannot consider Petitioner's Fourth Amendment claim. *See Reed v. Farley*, 512 U.S. 339, 347 (1994) (quoting *Stone*, 428 U.S. at 469) (federal courts cannot "consider a claim that evidence from an unconstitutional search was introduced at state prisoner's trial if the prisoner had 'an opportunity for full and fair litigation of the claim in the state courts.'")). Accordingly, the Court recommends that Petitioner's request for habeas corpus relief based on his Fourth Amendment claim (Ground One) be denied.

### B. Ground Two

In Ground Two, Petitioner asserts a Fifth Amendment violation based on the trial court's failure to give a *Willits* instruction based on the State's alleged destruction of

1 evidence.  (Doc. 7 at 7.)   Respondents argue that although Ground Two mentions the
2 Fifth Amendment, that claim is based solely on the state court's failure to give a *Willits*
3 instruction and, therefore, asserts a state law claim.  (Doc. 11 at 11.)  As discussed below,
4 the Court agrees that Ground Two presents a state law claim that is not cognizable on
5 federal habeas corpus review.  Alternatively to the extent that Ground Two presents a due
6 process claim, that claim lacks merit.

7 The *Willits* jury instruction is based on state law.  *See Willits*, 393 P.2d 274. "To
8 be entitled to a *Willits* instruction, a defendant must prove that (1) the state failed to
9 preserve material and reasonably accessible evidence that could have had a tendency to
10 exonerate the accused, and (2) there was resulting prejudice." *State v. Smith*, 762 P.2d
11 509 (1988); *see also State v. Speer*, 212 P.3d 787 (2009).  Because the *Willits* instruction
12 is based on state law, when the state court rules that a defendant is not entitled to a *Willits*
13 instruction as a matter of state law, that decision is not reviewable in a federal habeas
14 proceeding.  *Ballesteros v. Ryan*, 2014 WL 1911443, at *7 (D. Ariz. May 13, 2014)
15 (citing *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990)).

16 "A habeas court's review of a failure to give a jury instruction is limited to a
17 determination of whether the failure so infected the entire trial that the defendant was
18 deprived of his right to a fair trial." *Murray v. Schriro*, 2008 WL 2278140, at *32 (D.
19 Ariz. May 30, 2008), *aff'd*, 746 F.3d 418 (9th Cir. 2014).  "Because the omission of an
20 instruction is less likely to be prejudicial than a misstatement of the law, a habeas
21 petitioner whose claim involves a failure to give a particular instruction bears an
22 'especially heavy' burden." *Id.* (quoting *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977)).

23 Here, Petitioner alleges that the failure to give the state law *Willits* instruction
24 resulted in a violation of his due process rights.  When alleging a federal due process
25 claim, the "evidence must both possess an exculpatory value that was apparent before the
26 evidence was destroyed, and be of such a nature that the defendant would be unable to
27 obtain comparable evidence by other reasonably available means." *California v.*
28 *Trombetta*, 467 U.S. 479, 489 (1984).  "To establish a due process violation when the

1 State fails to preserve evidence that is only potentially exculpatory, [the petitioner] must demonstrate that the State acted in bad faith." *Ballesteros*, 2014 WL 1911443, at *7 (citing *Arizona v. Youngblood*, 488 U.S. 51, 57-58 (1988)).

In Ground Two, Petitioner alleges that the trial court erred for failing to give a *Willits* instruction based on the destruction of two blue latex gloves. (Doc. 7 at 7.) This is a state law claim that is not cognizable on federal habeas corpus review. Petitioner's citation to the Fifth Amendment is insufficient to raise a due process claim based on the State's failure to preserve evidence because Petitioner does not make any allegations to support such a claim. *See Langford v. Day*, 110 F.3d 1380, 1389 (9th Cir. 1996). However, even assuming that the blue latex gloves were potentially exculpatory, Petitioner does not establish a due process violation because he has not alleged, or shown, that the State acted in bad faith in destroying the blue latex gloves. *See Ballesteros*, 2014 WL 1911443, at *7.

Therefore, the Court concludes that Ground Two alleges a state law violation that is not subject to federal habeas corpus review. *See Ballesteros*, 2014 WL 1911443, at *7. To the extent that Ground Two alleges a due process claim based on the State's alleged destruction of evidence, that claim is unexhausted, but should be denied because it lacks merit.[4] *See* 28 U.S.C. § 2254(b)(2).

**C.    Ground Three**

In Ground Three, Petitioner asserts several claims of ineffective assistance of counsel. Respondents argue that although these claims are unexhausted, either because they are pending before the appellate court on post-conviction review or because Petitioner did not present them to the state court, the Court should deny relief on these

---

[4] This claim might also be technically exhausted and procedurally barred from federal habeas corpus review because Petitioner did not present this claim on direct appeal or in his first post-conviction petition, and state law would likely preclude him from presenting the claim in a successive post-conviction proceeding. However, the Court does not resolve this issue because Respondents neither raised it, nor specifically waived a procedural default defense. (Doc. 11 at 7-8.)

1 claims because they lack merit.  *See* 28 U.S.C. § 2254(b)(2) (stating that the court can
2 deny an exhausted claim if it lacks merit).

### 1. Ineffective Assistance of Counsel

To establish a claim of ineffective assistance of counsel, a petitioner must show that counsel's performance was objectively deficient and that counsel's deficient performance prejudiced the petitioner.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To be deficient, counsel's performance must fall "outside the wide range of professionally competent assistance."  *Id.* at 690.  When reviewing counsel's performance, the court engages a strong presumption that counsel rendered adequate assistance and exercised reasonable professional judgment.  *Id.*  "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Id.* at 689.  Review of counsel's performance is extremely limited.  Acts or omissions that "might be considered sound trial strategy" do not constitute ineffective assistance of counsel.  *Id.*

To establish a sixth amendment violation, a petitioner must also establish that he suffered prejudice as a result of counsel's deficient performance.  *Id.* at 691-92.  To show prejudice, a petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  The court need not address both *Strickland* requirements if the petitioner makes an insufficient showing on one.  *See id.* at 697 (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) (stating that "[f]ailure to satisfy either prong of the *Strickland* test obviates the need to consider the other") (citing *Strickland*, 466 U.S. at 688).

### 2. Ground Three (a)

In Ground Three (a), Petitioner asserts that trial counsel was ineffective because he wanted to testify, but trial counsel told him the case would unravel if he did.  (Doc. 7

- 11 -

at 8.) The Supreme Court has held that the right to be heard includes the right to testify on one's own behalf. *Rock v. Arkansas*, 483 U.S. 44, 49 (1987) ("It cannot be doubted that a defendant in a criminal case has the right to take the witness stand and testify in his or her own defense."). With respect to this right, "defense counsel's role is to advise the defendant whether he should take the stand, but the ultimate decision belongs to the defendant." *United States v. Hover*, 293 F.3d 930, 934 (6th Cir. 2002). The right to testify in one's own defense is personal; it may only be relinquished by the defendant, and such a waiver must be knowing and intentional. *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993).

However, such a waiver need not be explicit and may be implied. *United States v. Pino-Noriega*, 189 F.3d 1089, 1094 (9th Cir. 1999). The "waiver of the right to testify may be inferred from the defendant's conduct and is presumed from the defendant's failure to testify or not inform the court of his desire to do so." *Id.* at 1095 (quoting *Joelson*, 7 F.3d at 177). If a defendant remains "silent in the face of his attorney's decision not to call him as a witness," he waives his right to testify. *United States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993).

Petitioner alleges that trial counsel told him the case would unravel if he testified, but does not allege that trial counsel prevented him from testifying. (Doc. 7 at 8.) Additionally, the record reflects that Petitioner had two prior felony convictions, which could have been used to impeach Petitioner if he had testified. (Doc. 7-1 at 13.) Therefore, counsel was not deficient for advising Petitioner not to testify. Because Petitioner has not cited any evidence indicating that trial counsel prevented him from testifying, and counsel reasonably advised Petitioner not to testify, Petitioner has not established that counsel performed deficiently regarding Petitioner's right to testify.

Moreover, even assuming that counsel's performance was deficient for the reason Petitioner asserts, Petitioner has not shown that he was prejudiced by that deficient performance. To establish prejudice, Petitioner must demonstrate a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* Petitioner does not describe the testimony he would have given if he had testified at trial. (Doc. 7 at 8.) Accordingly, he has not shown that there is a reasonable probability that the outcome of the trial would have been different if he had testified at trial  Thus, Petitioner has not shown that he received ineffective assistance of counsel because counsel told him that case would unravel if he testified. Accordingly, this claim fails on the merits. *See* 28 U.S.C. § 2254(b)(2).

### 3. Ground Three (b)

In Ground Three (b), Petitioner alleges that trial counsel was ineffective for failing to compare his shoe size to the size of the boots that were introduced at trial. (Doc. 7 at 8.) Petitioner asserts that he wears a size 10.5 to 11, but the boots that were introduced at trial were a size 9. (Doc. 7 at 8; Doc. 12 at 2.) As set forth in the Arizona Court of Appeals' decision, the evidence at trial indicated that a police officer observed Petitioner in the vicinity of the truck stop where the incident took place. (Doc. 7-1 at 12.) The police officer took Petitioner into custody. (*Id.*) Another police officer noticed that Petitioner's boots left a distinctive impression in the dirt and saw similar prints near a gray sweatshirt found in the area. (*Id.*) One of the victims, Jason, identified the sweatshirt as that worn by the intruder who had carried a knife during the incident. (*Id.*) Petitioner does not challenge the appellate court's summary of the incident. (Docs. 7, 12.) The post-conviction court found that Petitioner was wearing the boots that were introduced at trial when he was arrested. (Doc. 7 at 21, 22.)

In his amended petition, Petitioner does not challenge the appellate or the post-conviction courts' descriptions of the incident. (*Id.* at 8.) In his reply, Petitioner asserts for the first time in this Court that the boots that were introduced at trial were not the boots he was wearing when he was arrested. (Doc. 12 at 2.) Petitioner's conclusory allegation regarding the boots is insufficient to support his claim that trial counsel was ineffective with respect to that evidence. Petitioner does not present any objective

evidence to substantiate his claim about his shoe size. Additionally, even assuming trial counsel was deficient for failing to investigate Petitioner's shoe size, or failing to raise that issue at trial, Petitioner has not shown that those deficiencies prejudiced him.

The incident as described in the appellate court's decision supports the finding that Petitioner was wearing the boots that were introduced at trial when he was arrested. (Doc. 7-1 at 12.) Additionally, the record reflects that a witness's testimony and DNA evidence connected Petitioner to the knife that was used in the crime. (Doc. 7-1 at 12; Doc. 11, Ex. A at 130-31, 136-37.) DNA evidence also linked Petitioner to latex gloves that were used in the crime. (Doc. 11, Ex. A at 130-31, 136-37.) Considering this other evidence connecting Petitioner to the crime, he has not shown that, but for counsel's failure to raise the issue of a discrepancy between Petitioner's shoe size and the size of the boots that were introduced at trial, there is a reasonable probability that the result of the proceeding would have been different. *See Strickland,* 466 U.S at 694. Accordingly, this claim lacks merit. *See* 28 U.S.C. § 2254(b)(2).

### 4.   Ground Three (c)

In Ground Three(c), Petitioner asserts that trial counsel was ineffective for failing to investigate, or present evidence, that "they were looking for either a native American or Mexican with long flowing hair." (Doc. 7 at 8.) Petitioner appears to assert that at some point, police were looking for an individual fitting this description, which did not apply to him.

Even assuming trial counsel was deficient for failing to assert that Petitioner did not fit the description of an individual police were looking for at some point during the investigation, Petitioner has not shown prejudice. The record reflects that a victim, Jason, reported that there were two intruders and that one of the intruders who ran from the truck stop had a limp. (Doc. 7-1 at 11.) A police officer spotted an individual walking with a limp in the vicinity of the truck stop and took him into custody. (*Id.* at 12.) The person with the limp was later identified as Petitioner. (*Id.*) The record also reflects that DNA evidence connected Petitioner to the knife that was used during the

incident and to latex gloves that the police discovered. (Doc. 7-1 at 12; Doc. 11, Ex. A at 130-31, 136-37.)

Considering this evidence connecting Petitioner to the incident, he has not shown that, but for counsel's failure to raise at trial the issue of a discrepancy between Petitioner's appearance and the appearance of an individual that the police "were looking for" at some point during the investigation, there is a reasonable probability that result of the proceeding would have been different. *See Strickland,* 466 U.S at 694. Accordingly, this claim lacks merit.

### 5. Ground Three (d)

In Ground Three (d), Petitioner asserts that trial counsel was ineffective for failing to investigate "why no photos were taken of any evidence that was collected." (Doc. 7 at 8; Doc. 12 at 2-3.) However, the record reflects that numerous photographs were taken by police and admitted at trial. (Doc. 7 at 21.) Accordingly, Petitioner has not shown that trial counsel was deficient for failing to object to the lack of photographs of some evidence. Additionally, he does not explain how counsel's alleged failure to object to an alleged lack of photographs resulted in prejudice. Petitioner's unsupported, conclusory allegations are not sufficient to support a claim for federal habeas relief. *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th Cir. 1995) (stating that conclusory allegations with no reference to the record or other evidence do not warrant habeas relief.)

### 6. Ground Three (e)

In Ground Three (e), Petitioner alleges that trial counsel was ineffective for failing to investigate "how these gloves were collected." (Doc. 7 at 8.) Petitioner does not provide any additional information to support this claim. Petitioner's unsupported, conclusory allegations are not sufficient to support a claim for federal habeas relief. *See Jones*, 66 F.3d at 204-05. In his reply, Petitioner expands on this claim by arguing that five latex gloves were introduced into evidence at trial. (Doc. 12 at 3.) Petitioner claims that he had latex gloves in his apartment because he used them to clean his kitchen and bathroom and he questions "why so many latex gloves were found at the crime scene 5

total all with Petitioner's D.N.A." (Doc. 12 at 3.) Petitioner also states that at trial, the victim testified that the "person who had the knife and the gray sweatshirt reached out towards the victim and suspect had on gray winter style mitts, not latex gloves." (*Id.*)

Even assuming trial counsel was deficient for failing to investigate the collection of the latex gloves, Petitioner has not shown prejudice. As set forth above, a victim stated that one of the intruders had a limp, police located a person with a limp near the truck stop and arrested him, and that person was later identified as Petitioner. (Doc. 7-1 at 11-12.) In addition, DNA evidence connected Petitioner to the knife used during the incident. (Doc. 7-1 at 12; Doc. 11, Ex. A at 130-31, 136-37.) Police also found a sweatshirt in the area, which one of the victims identified as the sweatshirt worn by the person who carried the knife. (Doc. 7-1 at 12.)

Considering this evidence connecting Petitioner to the incident, he has not shown that but for counsel's failure to raise at trial the issue of a discrepancy between Petitioner's appearance and the appearance of an individual that the police "were looking for" at some point during the investigation, there is a reasonable probability that result of the proceeding would have been different. *See Strickland,* 466 U.S at 694. Accordingly, this claim lacks merit.

## V. Conclusion

As set forth above, the amended petition is a mixed petition. However, because Petitioner's claims either are not cognizable on federal habeas corpus review or lack merit, the Court should deny relief and not stay this case and hold it in abeyance while Petitioner exhausts his available state remedies. *See* 28 U.S.C. § 2254(b)(2); *Cassett,* 406 F.3d at 623-24 (9th Cir. 2005).

Accordingly,

**IT IS RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus (Doc. 7) be **DENIED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the

Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment. The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72. The parties have fourteen days within which to file a response to the objections. Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation. *See* Fed. R. Civ. P. 72.

Dated this 23rd day of February, 2016.

_____
Bridget S. Bade
United States Magistrate Judge